■ EDWARD T. SILVA et al., Respondents, v 81ST STREET & AVENUE A CORP. et al., Appellants. (And a Third-Party Action.)—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered March 7, 1990, which, inter alia, denied defendants' cross motion for summary judgment, unanimously reversed, on the law, the cross motion granted, and the action is dismissed, without costs. The clerk is directed to enter judgment dismissing the complaint.

On January 15, 1984, plaintiff fell from a roof atop a Yorkville restaurant approximately two stories high. Sustaining serious injuries, he has brought this action against the corporate owners of the premises. The ground floor and basement of the premises were occupied by the eating place in which plaintiff worked as a manager. Defendants are the landlords of plaintiff's employer.

Plaintiff's proof, by way of affidavit and testimony at his EBT, was that the weather conditions that day were icy, and that in the late afternoon a restaurant customer complained that water was leaking onto his table. Since plaintiff had been on the roof "at least eight or nine times" in the past to clean a clogged drain there, and he believed the leak was once again due to this circumstance, he unchained a ladder kept in the

rear of the premises and climbed up onto the roof. After cleaning the drain, and waiting on the roof for about 15 minutes to ascertain that the water leakage had abated, plaintiff, in his deposition taken December 2, 1987, described his subsequent movements beginning with stepping over a low railing "approximately a foot and a half high" around the perimeter of the roof and his descent therefrom as follows:

"A I would hold onto the iron railing, straddle with one leg, then straddle the other leg, get both on the other side of the iron railing, and holding onto the railing, I proceeded to take one step onto the first rung of the ladder.

"Q So at one time both of your feet are on the outside of the iron railing?

"A That's right.

"Q How wide is that area?

"A I'd say about twenty, twenty-four inches wide.

"Q And you would step onto the ladder and proceed down?

"A Yes.

"Q Did you actually step onto the ladder on January 15, on this day?

"A I don't remember.

"Q What was the last thing you do remember?

"A Straddling over the iron grate, the iron railing.

"Q Do you remember losing your balance?

"A It's a blur to me. I don't remember anything anymore.

"Q So the last thing you remember is you had both feet on the outside of the iron railing? Or not even that far?

"A Not even that far.

"Q Tell me the exact last thing you recall, then.

"A Facing the iron railing.

"Q Facing from which direction? From on the roof?

"A From on the roof as you would go over or get ready to go over the iron railing.

"Q Do you remember putting one foot over the railing?

"A There are sometimes that I do it late at night in a dream, but I don't know if it's a recollection or a dream or—

"Q How about today?

"A It's a blank.

"Q Do you remember holding onto the railing?

"A Yeah, that's about the last thing I remember.

"Q What is the next thing you remember after that part?

"A Feeling very cold, laying on the ground."

It is clear from the testimony that plaintiff had no recollection of the accident ("It's a blank") and was, at best, testifying primarily as to his prior course of conduct. In his affidavit on the motion, sworn to over 2½ years later on June 30, 1989, he was more specific, as follows: "When the roof was almost completely empty of water, I then proceeded to head down the ladder. The busboy was not there. In order to descend, I straddled the iron railing and then held on to the iron railing and proceeded to take one step on to the first rung of the ladder. That is the last thing that I remember. I do remember facing the iron railing and holding on to the railing. The next thing that I remember is feeling very cold and lying on the ground."

Thus on the first occasion of his oral examination plaintiff did not remember ever clearing the perimeter railing, much less making foot contact with the ladder. In his later affidavit he states that he "proceeded to take one step on to the first rung of the ladder", but no explanation is proffered as to what enhanced his recollection on this score.

It is, of course, the ordinary rule that where a plaintiff has offered two versions of an accident, only one of which would cast the defendant in liability, the inconsistency presents a question for the trier of fact (*Russell v Rensselaer Polytechnic Inst.,* 160 AD2d 1215, 1216). The difficulty here for plaintiff is that neither version, whether considered separately or in the aggregate, spells out a cause of action. Other than plaintiff, no one else witnessed plaintiff's fall. Plaintiff has failed to identify what it was which brought about his fall, much less to point to any act or omission of defendants which could be proximately related thereto.* To find defendants liable upon plaintiff's first cause of action sounding in common-law negligence here would be to rest on sheer speculation as to how the accident occurred—an inadmissible course (*Smith v Wisch,* 77

---

* Plaintiff does allege that the failure of defendants to clean the drain was a breach of duty to him, resting not only in tort law but on an affirmative covenant in the restaurant lease. Without passing on the doubtful proposition that such a covenant could be construed to run to plaintiff's personal benefit, we simply note that after the 15-minute period elapsed from the time plaintiff cleared the clogged drain to his departure from the roof attenuates the clogging as a proximate cause of the accident to the vanishing point (*Sheehan v City of New York,* 40 NY2d 496; *Scott v Mead,* 132 AD2d 755; *Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950). The fact that the clogged condition brought plaintiff to the roof did not make defendants the insurers of his safety after the condition was remedied, even if the source of the corrective action was plaintiff himself.

AD2d 619, *lv denied* 51 NY2d 709; *Morales v Kiamesha Concord,* 43 AD2d 944; *Farinaro v State of New York,* 132 AD2d 642). And while plaintiff's amnesia may operate to reduce his burden of proof, it does not relieve him of the obligation to establish a prima facie case as the predicate for recovery *(Schechter v Klanfer,* 28 NY2d 228).

Nor does plaintiff present a triable claim under Labor Law § 240, even if we were to conclude that his actions with respect to the drain constituted "cleaning" within the meaning of the statute. Even if Mr. Silva actually fell from the ladder, his proof is devoid of any showing that this instrumentality fell below the statutory standard and was not "so constructed, placed and operated as to give proper protection" (Labor Law § 240 [1]). No defect in the ladder or any misuse of it is even suggested, and thus this cause of action fails as a matter of law *(Hennes v Blitz,* 44 AD2d 598). And without such a showing, it is understandable that plaintiff's Labor Law claim never even addressed the second prerequisite for recovery, namely to show that a violation of the statute was a contributing cause of his fall *(Duda v Rouse Constr. Corp.,* 32 NY2d 405, 410). Concur—Murphy, P. J., Kupferman, Sullivan, Wallach and Rubin, JJ.